IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 4:23-CR-323-Y |
| v. | |
| DR. CARLOS HORNEDO (01) | |

## FACTUAL RESUME

PLEA TO COUNT ONE OF THE INFORMATION:
Count One: Conspiracy to Solicit and Receive Illegal Kickbacks, in violation of 18 U.S.C. § 371, with the underlying substantive offense of Soliciting and Receipt of Illegal Kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B).

MAXIMUM PENALTY:
$250,000 fine and not more than five (5) years imprisonment, plus a term of supervised release of not more than 3 years. If the defendant violates any condition of supervised release, the Court may revoke such term of supervised release and require the defendant to serve an additional period of confinement. Further the Court must impose a Mandatory Special Assessment of $100.00.

ELEMENTS OF THE OFFENSE:
The essential elements which must be proved beyond a reasonable doubt in order to establish the offense charged in Count One of the Information, are as follows:[1]

> First.  That the defendant and at least one other person made an agreement to commit the crime of soliciting and receiving illegal kickbacks, in violation of the Anti-Kickback statute as charged in the Information;
>
> Second.  That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and;
>
> Third.  That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Information, in order to accomplish some object or purpose of the conspiracy.

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019).

Factual Resume—Page 1

STIPULATED FACTS:

1. Defendant Dr. Carlos Hornedo is a medical doctor in Laredo, Texas.

2. Dr. Hornedo ordered certain toxicology tests for patients that he saw. He ordered that these tests be performed by Unified Laboratory Services, LLC ("Unified") and Spectrum Diagnostic Laboratory, LLC ("Spectrum"), both of which were located in the Northern District of Texas.

3. Dr. Hornedo became aware of the services offered by Unified, Spectrum, and RK through a marketer he knew, named Juan Rojas, who is a codefendant.

4. Rojas and Dr. Hornedo agreed that Dr. Hornedo would submit a substantial number of his toxicology orders to Unified and Spectrum in exchange for illegal financial incentives, otherwise known as kickbacks. They further agreed that he would order a significant number of toxicology tests to justify the kickbacks.

5. As a result of this arrangement, Dr. Hornedo submitted orders that resulted in billings by Unified and Spectrum that were in excess of $4,100,000 to federal health care programs. In exchange, Dr. Hornedo received approximately $412,000 in kickbacks, as further detailed below.

6. These kickbacks included lease payments. The lease payments were not based on legitimate rentals of space. Instead, they were based on arbitrary information, made retroactive, and were directly tied to the volume of referrals, as suggested by Rojas. Dr. Hornedo received approximately $45,000 in lease payments.

7. These kickbacks consisted of medical advisor agreements, in which Dr. Hornedo would be paid for theoretical advisory services. In reality, Dr. Hornedo

performed no such services, was not paid on an hourly rate, and these agreements were used as a way to funnel kickbacks to Dr. Hornedo. Dr. Hornedo received approximately $109,000 in medical advisor payments.

8. These kickbacks also included ownership shares in Reliable Labs, LLC ("Reliable"). Reliable was controlled by codefendants. In 2016, Dr. Hornedo bought 1.75 shares of ownership in Reliable for $7,000. Between 2016 and 2018, Dr. Hornedo received approximately $216,000 in payouts from Reliable, net of his $7,000 investment. In exchange for this significant return on investment, Dr. Hornedo continued to order toxicology tests be submitted to Unified, Spectrum, and Reliable. Dr. Hornedo agrees that this was a kickback.

9. These illegal financial incentives included salary offsets. In agreement with Dr. Hornedo, Unified, Spectrum, Reliable and Rojas authorized payments to employees for Dr. Hornedo who also acted as a "collector" for Unified and Spectrum. The amount of salary offset was not commensurate with the amount of time these employees spent on "collecting." Collectors were told that their compensation was based on the volume of referrals. Dr. Hornedo received approximately $40,000 in salary offsets, which he agrees represent kickbacks.

10. The government agrees that Dr. Hornedo received approximately $412,000 in kickback payments and that this number would be the appropriate loss number under the guidelines for this defendant only, given the timeliness of his plea.

11. The defendant agrees that the defendant committed all the essential elements of the offenses. This factual resume is not intended to be a complete accounting

of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this 5th day of January, 2023. 4
                                                                                        CH

_____
DR. CARLOS HORNEDO
Defendant

_____
JENNIFER ECKLUND
Attorney for Defendant

Factual Resume—Page 4